UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARTHA LIDIA COTOC YAC DE YAC,<br><br>Petitioner,<br><br>v.<br><br>LAURA HERMOSILLO et al.,<br><br>Respondent. | CASE NO. 2:25-cv-02593-DGE-TLF<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) |

    Petitioner Matha Lidia Cotoc Yac de Yac entered the United States in 2021, was apprehended by immigration officers upon arrival, and then was subsequently released and placed into removal proceedings. (Dkt. No. 1 at 6.) In 2023, an immigration judge terminated her removal proceedings without imposing any conditions on her liberty. (*Id.*) In 2025, Petitioner was again apprehended, placed into removal proceedings, and is currently detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington. (*Id.*; Dkt. No. 21 at 2.) Having reviewed the petition, the return memorandum (Dkt. No. 20), the response (Dkt. No. 23), and all supporting materials, the Court

GRANTS Petitioner's writ of habeas corpus by ordering Respondents to conduct a bond hearing at Petitioner's request.

## I    BACKGROUND

### A. Factual Background

Petitioner, a citizen of Guatemala, entered the United States on August 20, 2021. (Dkt. No. 1 at 4, 6.)  A Border Patrol Agent encountered Petitioner at the border and determined she "had unlawfully entered the United States from Mexico." (Dkt. No. 22-1 at 3.)  Petitioner was subsequently arrested and transported to a processing site. (*Id.*)  Petitioner was later "paroled due to time in custody constraints," and released with "Alternate to Detention as a Condition of Parole." (*Id.*)  On October 4, 2021, the Department of Homeland Security ("DHS") issued a Notice to Appear which placed Petitioner in formal removal proceedings pursuant to Immigration and Nationality Act ("INA") § 240, codified at 8 U.S.C. § 1229a. (Dkt. No. 22-2 at 2.)  The Notice to Appear charged Petitioner under 8 U.S.C. § 1182(a)(6)(A)(i)[1] as a noncitizen "present in the United States without being admitted or paroled;" it did not assert she was an "arriving alien." (*Id.*)

Petitioner asserts she was released on an order of recognizance and subject to ICE supervision for over a year.[2] (Dkt. Nos. 1 at 6; 14 at 1; 15 at 2.)  On January 19, 2022, Petitioner filed an application for asylum with United States Citizenship and Immigration Services ("USCIS"), which is still pending. (Dkt. No. 1 at 2.)

On March 16, 2023, an immigration judge dismissed the Notice to Appear "based on the immigration enforcement priorities of the then-presidential administration," and ICE closed

---

[1] The Notice to Appear identifies INA § 212(a)(6)(A)(i), which is codified at 8 U.S.C. § 1182(a)(6)(A)(i).

[2] Neither party provided a copy of Petitioner's release documentation.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) - 2

Petitioner's case and terminated all supervision requirements. (Dkt. Nos. 21 at 2; 22-4 at 3.) On May 14, 2025, Petitioner filed an application for U non-immigrant status, which remains pending. (Dkt. Nos. 1 at 2; 1-1.) On December 12, 2025, DHS issued a warrant for arrest of Petitioner pursuant to INA § 236and 8 U.S.C. § 1226, and detained Petitioner a second time. (Dkt. Nos. 22-4 at 2–4; 22-3 at 2.) ICE believed they had probable cause to stop Petitioner's vehicle because the license plate showed the vehicle belonging to Petitioner's husband, a noncitizen "present in the United States without permission." (Dkt. No. 22-4 at 3.) On the same day, Petitioner was issued a second Notice to Appear. (Dkt. No. 22-5 at 2.) The 2025 Notice to Appear again charged Petitioner under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen "present in the United States without being admitted or paroled" and again did not assert Petitioner was an "arriving alien." (*Id.*)

**B. Procedural Background**

On December 12, 2025, Petitioner filed a petition for writ of habeas corpus and an accompanying motion for temporary restraining order ("TRO") in the United States District Court, District of Oregon. (Dkt. Nos. 1, 2.) District Judge Michael H. Simon granted in part Petitioner's motion for TRO, ordering Respondents not to transfer Petitioner from the District of Oregon, or if she had already been transferred to Washington state, then not to transfer Petitioner from Washington state. (Dkt. No. 6 at 7.) Because Petitioner filed her petition after she was transferred out of the District of Oregon, the Parties filed a stipulated motion to transfer venue to the Western District of Washington. (Dkt. Nos. 7, 8.) The case was thereafter transferred from the District of Oregon to this district. (Dkt. No. 10.) On December 17, 2025, Petitioner filed an *ex parte* motion for order to show cause and issue expedited briefing schedule (Dkt. No. 14) and a new TRO (Dkt. No. 15). The Court, treating the motion for TRO as a motion to decide the

habeas petition on an expedited basis, entered a briefing schedule. (Dkt. No. 17 at 2–3.) Respondents filed a response memorandum on December 31, 2025. (Dkt. No. 20.) Petitioner filed her reply on January 6, 2026. (Dkt. No. 23.) The Court held oral argument on January 14, 2026.

## II    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on her habeas petition, Petitioner "must show [she] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn. May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

## III    ANALYSIS

### A. Petitioner is Not Subject to Mandatory Detention Under 8 U.S.C. 1225(b) and is Entitled to a Bond Hearing under 8 U.S.C. § 1226(a)

At the outset, Respondents argue Petitioner is subject to mandatory detention under expedited removal proceedings pursuant to 8 U.S.C. § 1225(b), and its implementing regulations, 8 C.F.R. § 235 *et seq*. (Dkt. No. 20 at 1–2.) § 1225 applies to "applicants for admission" to the United States, who are defined as an "alien present in the United States who has not been admitted or who arrives in the United States . . . ." 8 U.S.C. § 1225(a)(1). Applicants for

admission fall into two categories, both of which are subject to mandatory detention.[3] *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Individuals detained under § 1225 can only be paroled into the United States "for urgent humanitarian reasons or significant public benefit." *Id.* at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)).

Petitioner contends that because she resided in the United States before her 2025 apprehension, she was not "seeking admission" under § 1225(b)(2) when she was detained on December 12, 2025 while driving to work. (Dkt. No. 23 at 2.) 8 U.S.C. § 1226(a) is broader than its counterpart and is the "default rule" for noncitizens present in the United States who are arrested and placed in immigration detention. *Jennings*, 583 U.S. at 303. § 1226(a) permits the government to release a detainee on bond during the pendency of the detainee's removal proceedings. *Id.*

The Court finds the record does not support Respondents' position. Even assuming Petitioner was initially detained and released pursuant to 8 U.S.C. § 1225, a conclusion that is highly doubtful, her release would have been revoked upon the initiation of her 2021 removal proceedings. This is because any release on parole "terminates . . . upon service of a charging document for either expedited removal proceedings under Section 1225(b) or removal proceedings under Section 1229a." (Dkt. No. 20 at 2) (citing 8 C.F.R. § 212.5(e)(1), (2)(i)). Yet, Petitioner was not taken into custody upon receiving the 2021 Notice to Appear; instead, she was permitted to remain on release during the pendency of the 2021 removal proceedings, which also contradicts Respondents' theory that Petitioner was detained subject to § 1225. *See*

---

[3] § 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud, misrepresentation, or a lack of valid documentation. § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" § 1225(b)(1). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) - 5

*Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115–16 (9th Cir. 2007) (holding that a non-citizen released on an "Order of Release on Recognizance" necessarily must have been detained and released under § 1226, including because he was not an "arriving alien" under the regulations governing § 1225 examinations).

Petitioner's 2021 Notice to Appear further indicates she was not seeking admission under § 1225.  Notably, the issuing officer explicitly declined to designate Petitioner as an "arriving alien," which is the active language used to define the scope of § 1225(b)(2)(a) in its implementing regulation.  8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this chapter, any *arriving alien* who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to [§ 1229a] shall be detained in accordance with [§ 1225(b)].") (emphasis added); *see also Martinez*, 792 F. Supp. 3d at 218 (concluding "arriving alien" language synonymous with § 1225).  Additionally, Petitioner's removal proceedings were terminated in 2023 which in turn "terminated all supervision requirements." (Dkt. No. 21 at 2.)  Regardless of the basis for her initial detention, when Respondents chose to dismiss her removal proceedings, they were aware of Petitioner's presence in the United States without any form of parole under the INA.  The termination of her removal proceedings thus also demonstrates that Petitioner has not been "seeking admission" in the time since.  *See* 8 C.F.R. § 1239.2(e).

Finally, DHS issued a warrant for Petitioner's arrest pursuant to § 236 of the INA, or § 1226.  (Dkt. No. 22-3 at 2.)  And the officer who issued Petitioner's 2025 Notice to Appear again declined to identify her as an "arriving alien," once again identifying her as an "alien present in the United States who has not been admitted or paroled." (Dkt. No. 22-5 at 2.)

In addition, the statutory analysis contained in *Rodriguez v. Bostock* is relevant here.  In *Rodriguez*, the Court certified a "Bond Denial Class" which included noncitizens "'present in the

1   United States without being admitted or paroled' under section 1182(a)(6)(A)." -- F. Supp. 3d --,

2   2025 WL 2782499, at *17 (W.D. Wash. 2025).  The court concluded the default discretionary

3   bond procedures in § 1226(a) applied to the Bond Denial Class and therefore were not subject to

4   mandatory detention under § 1225.  *Id*.  In other words, "noncitizens arrested while already

5   present in the United States continue to be governed under the discretionary detention scheme in

6   section 1226." *Id.* at *18 (internal quotation marks removed).  This conclusion applies to

7   Petitioner even though Petitioner is not a *Rodriguez* Bond Denial Class member.

8    Respondents' return memorandum does not acknowledge § 1226; their position appears

9   to be that any and all noncitizens not previously admitted to the United States are subject to

10  mandatory detention regardless of circumstance.  (*See generally* Dkt. No. 20.)  To the extent

11  Respondents rely on that position, the Court incorporates the reasoning and conclusions from

12  *Rodriguez*.  *See id.* at *16–26.  The *Rodriguez* statutory analysis supports the contention that

13  Petitioner, who resided in the United States for years prior to her most recent apprehension, is

14  detained under § 1226(a).  *See also Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC,

15  2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (collecting cases of courts that have

16  determined similarly situated detainees were detained under § 1226(a)).

17   Thus, the Court concludes Petitioner is not subject to mandatory detention pursuant to

18  § 1225, and instead is subject to the procedures contemplated under § 1226.  As a result,

19  Petitioner is eligible for a bond hearing.

20   At the January 14, 2025 hearing, Petitioner argued that it would be futile to seek a bond

21  hearing from an immigration judge under § 1226(a) as her request would be summarily denied

22  based on the government's current interpretation of the Board of Immigration Appeal's ("BIA")

23  recent decisions in *Matter of Q. Li*, 19 I&N Dec. 66 (B.I.A. 2025) and *Matter of Yajure Hurtado*,

24

1    29 I&N Dec. 216 (B.I.A. 2025).  Counsel for Respondents agreed that pursuant to *Hurtado* and

2    § 1225, Petitioner would not be entitled to a bond hearing and that, even if she was, Petitioner

3    would need to request a bond hearing.  Thus, according to Respondents, Petitioner is not entitled

4    to relief because she has not made such a request.

5           Respondents' alternate position suggests exhaustion bars to relief.  But for habeas claims,

6    "[t]he exhaustion requirement is prudential, rather than jurisdiction."  *Hernandez v. Sessions*, 872

7    F.3d 976, 988 (9th Cir. 2017) (citations omitted).  The Court finds that the prudential exhaustion

8    requirement should be waived as it would be futile to seek release by administrative means.

9    Specifically, because Respondents contend that Petitioner is subject to indefinite mandatory

10   detention under 8 U.S.C. § 1225(b), under that framework, Petitioner would have no statutory

11   right to a bond hearing during her detention and therefore lacks recourse through statutory or

12   administrative means.  *See Jennings*, 583 U.S. at 282 ("§§ 1225(b) . . . do[e]s not give detained

13   aliens the right to periodic bond hearings during the course of their detention."); *Rodriguez Diaz*

14   *v. Garland*, 53 F. 4th 1189, 1201 (9th Cir. 2022).  Further, because the BIA has recently held that

15   all noncitizens present within the country without admission are seeking admission pursuant to

16   § 1225, requiring Petitioner to first pursue administrative relief, i.e., request a bond hearing

17   before an immigration judge, would be futile.  *See J.A.C.P. v. Wofford*, No. 1:25-CV-01354-

18   KES-SKO (HC), 2025 WL 3013328, at *7 (E.D. Cal. Oct. 27, 2025) ("In addition, pursuit of

19   administrative remedies would almost certainly be futile given the BIA's recent holding that all

20   noncitizens present in the United States without admission are 'seeking admission' for purposes

21   of 8 U.S.C. § 1225(b)(2)(A) and must be detained.") (citing *Hurtado*, 29 I&N Dec. 216).

22          For these reasons and because Respondents agree that Petitioner's request for a bond

23   hearing would be denied, the Court will waive the prudential exhaustion requirement for

24

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS BY REQUIRING A BOND HEARING
(DKT. NO. 1) - 8

Petitioner's claim for habeas corpus relief. *See Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (waiving prudential exhaustion requirement because the BIA "already applied its expertise in deciding and designating" *Hurtado* as precedential, pursuant to which detainees are subject to mandatory detention without bond under § 1225(b)(2)).

However, the Court concludes Petitioner's request for release is premature. § 1226 requires only consideration on bond, and a bond hearing is therefore sufficient to correct Respondents' ongoing violation of the INA. *See* 8 U.S.C. § 1226(a). Although Petitioner has not requested this specific relief, the federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." *Id.* A district court has equitable discretion in determining the appropriate remedy "as law and justice require" for unlawful detention in a habeas petition pursuant to § 2254. *See Brown v. Davenport*, 596 U.S. 118, 127–28 (2022).

In summary, Respondents are ordered to schedule Petitioner for a bond hearing pursuant to § 1226.

### B. Petitioner Fails to Convince the Court She Was Entitled to a Pre-Detention Hearing

Petitioner also argues Respondents were required to provide her with a hearing "*prior* to her re-detention, during which ICE needed to have proven by clear and convincing evidence that [Petitioner] violated her conditions of release and was not a flight risk or danger to the community." (Dkt. No. 23 at 3.) However, Petitioner's previous removal proceedings were terminated on March 16, 2023, which terminated all of Petitioner's supervision requirements. (Dkt. Nos. 21 at 2; 22-4 at 3.) Furthermore, the cases Petitioner cites in support of requiring a

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS BY REQUIRING A BOND HEARING (DKT. NO. 1) - 9

pre-detention hearing are inapposite.  Each case involved a detainee who had been released subject to an order of supervision and engaged in active removal proceedings.  *See, e.g., E.A. T.-B v. Wamsley*, 795 F. Supp. 3d 1316, 1319, No. C25-1192-KKE, 2025 WL 2402130 (W.D. Wash. Aug. 19, 2025) (petitioner previously released on an order of recognizance and actively participating in immigration court hearings); *Francois v. Wamsley*, No. C1:25-cv-02122-RSM-GJL, 2025 WL 3063251 at *1 (W.D. Wash. Nov. 3, 2025) (petitioner released on humanitarian parole and actively participating in immigration proceedings); *Kumar v. Wamsley*, No. 2:25-CV-01772-JHC-BAT, 2025 WL 2677089 at *1 (W.D. Wash. Sept. 17, 2025) (petitioner released on order of recognizance and attended ICE check-ins); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1133, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663 (W.D. Wash. Sept. 12, 2025) (petitioner released on parole and engaged in ICE monitoring requirements while awaiting immigration hearing).  In contrast, an immigration judge terminated Petitioner's removal proceedings without imposing any conditions on her liberty.

On December 12, 2025, DHS issued an administrative arrest warrant and detained Petitioner pursuant to §1226 and 8 U.S.C. § 1357,[4] and subsequently issued her a new Notice to Appear.  (Dkt. Nos. 22-3 at 2, 22-5 at 2.)  Petitioner does not identify a basis to conclude that ICE lacked the authority to issue the administrative arrest warrant or that the administrative arrest warrant is facially invalid.  Instead, Respondents have initiated new removal proceedings against Petitioner pursuant to § 1226 and must follow its statutory procedures.  The Court has ordered Respondents to provide Petitioner with a bond hearing under § 1226(a).  Thus, Respondents have been ordered to either comply with due process or release Petitioner.

---

[4] INA § 287 is codified at 8 U.S.C. § 1357.

Because Respondents are ordered to comply with the statutory procedures of § 1226, the Court denies Petitioner's due process argument. If Respondents fail to comply with this Order, Petitioner may seek further relief from the Court at that time.

## IV   CONCLUSION

For the reasons explained above, the Court GRANTS the petition for writ of habeas corpus (Dkt. No. 1) by requiring a bond hearing and ORDERS:

1. Within **seven (7) days** of receiving Petitioner's request for a bond hearing, Respondents must either provide her with a constitutionally adequate bond hearing under 8 U.S.C. § 1226(a) or release her under an appropriate order of supervision.

2. Respondents are ENJOINED from denying Petitioner the ability to be released on bond on the basis that she is subject to mandatory detention under 8 U.S.C. § 1225(b).

3. The parties shall file a joint status report in **fourteen (14) days** confirming compliance with this Order. The status report shall detail if and when the ordered bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

The Clerk shall enter judgment and close the case.

Dated this 16th day of January, 2026.

David G. Estudillo
United States District Judge